UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------

|  |  |
|---|---|
| STEPHEN BUSHANSKY, | Case No._____ |
| Plaintiff, |  |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| DIAMOND S SHIPPING INC., ALEXANDRA KATE BLANKENSHIP, GERASIMOS G. KALOGIRATOS, HAROLD L. MALONE III, NADIM Z. QURESHI, CRAIG H. STEVENSON, JR., BART H. VELDHUIZEN, and GEORGE CAMBANIS, | JURY TRIAL DEMANDED |
| Defendants. |  |

--------------------------------------------------------------

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.      This action is brought by Plaintiff against Diamond S Shipping Inc. ("Diamond" or the "Company") and the members of Diamond's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Diamond will be acquired by International Seaways, Inc.

("INSW") through its subsidiary Dispatch Transaction Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On March 31, 2021, Diamond and INSW issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated March 30, 2021 (the "Merger Agreement").  Under the terms of the Merger Agreement, Diamond shareholders will receive 0.55375 shares of INSW common stock for each share of Diamond common stock they own (the "Merger Consideration").  Upon completion of the merger, INSW and Diamond shareholders will own approximately 55.75% and 44.25% of the combined company, respectively.  The Proposed Transaction is valued at approximately $2 billion.

3.      On May 5, 2021, INSW filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Diamond stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Diamond and INSW's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Moelis & Company LLC ("Moelis"); and (ii) Moelis' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Diamond stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.      In short, unless remedied, Diamond's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the

stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Diamond's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Diamond.

9.      Defendant Diamond is a Republic of the Marshall Islands corporation, with its principal executive offices located at 33 Benedict Place, Greenwich, Connecticut 06830.  Diamond is one of the largest energy shipping companies providing seaborne transportation of crude oil, refined petroleum and other petroleum products.  Diamond's shares trade on the New York Stock Exchange under the ticker symbol "DSSI."

10.     Defendant Alexandra Kate Blankenship ("Blankenship") has been a director of the Company since March 2019.

11.     Defendant Gerasimos G. Kalogiratos ("Kalogiratos") has been a director of the Company since March 2019.

12.     Defendant Harold L. Malone III ("Malone") has been a director of the Company since March 2019.

13.     Defendant Nadim Z. Qureshi ("Qureshi") is Chairman of the Board and has been a director of the Company since March 2019.

14.     Defendant Craig H. Stevenson, Jr. ("Stevenson") has been President, Chief Executive Officer ("CEO"), and a director of the Company since March 2019.

15.     Defendant Bart H. Veldhuizen ("Veldhuizen") has been a director of the Company since March 2019.

16.     Defendant George Cambanis ("Cambanis") has been a director of the Company since March 2020.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     INSW is a Marshall Islands corporation with its principal executive offices located at 600 Third Avenue, 39th Floor, New York, New York 10016.  INSW owns and operates a fleet of oceangoing vessels engaged primarily in the transportation of crude oil and petroleum products in the International Flag trade.  INSW's vessel operations are organized into two segments: Crude Tankers and Product Carriers.  At December 31, 2020, INSW owned or operated an International

Flag fleet of 36 vessels (totaling an aggregate of 6.1 million deadweight tons ("dwt")).  INSW's common stock trades on the New York Stock Exchange, under the ticker symbol "INSW."

19.     Merger Sub is a Republic of Marshall Islands corporation and a wholly owned subsidiary of INSW.

## SUBSTANTIVE ALLEGATIONS

**<u>Background of the Company</u>**

20.     Diamond provides seaborne transportation of crude oil, refined petroleum and other products in the international shipping markets.  Together with its subsidiaries, it is one of the largest publicly listed owners and operators of crude and product tankers in the world.  As of February 17, 2021, Diamond's operating fleet consisted of 64 vessels with an aggregate carrying capacity of approximately five million dwt.  Diamond's vessel operations are composed of two segments: crude tankers, which consists of 13 Suezmax vessels and one Aframax vessel, and product tankers, which consists of 50 medium range ("MR") vessels.

21.     The average age of Diamond's overall fleet is approximately 10.4 years weighted by dwt and ownership for the calendar year 2021.  The Company's MR fleet has an average age of approximately 12.5 years, which is approximately equal to the global MR fleet average age. The Company's Suezmax fleet has an average age of approximately 8.0 years, taking into account two vessel sales delivered to the purchaser in January and February 2021, which compares favorably to the industry average Suezmax age of approximately 10.3 years.  Diamond's full fleet of 64 vessels is active in the market and earning revenue.  The Company's customers primarily include large, well-established charterers, which include fully integrated oil companies, smaller oil companies, oil traders, large oil distributors, governments and national oil companies, and storage facility operators.  Diamond pursues a chartering strategy that seeks an optimal mix of

employment of its vessels.  The Company currently operates its vessels in both spot and time charter markets, with approximately 9% of its fleet on time charters with average remaining charter term of 0.8 years as of January 2021.

22.     On April 28, 2021, the Company announced its fourth quarter 2020 financial results in which defendant Stevenson commented:

> Although near-term market conditions will likely remain challenging, the positive long-term market dynamic remains unchanged.  In fact, the permanent closures of certain refineries will result in increased tanker demand for product tankers once conditions normalize.  Overall tanker demand is expected to gradually increase over the course of 2021 and eventually return to pre-pandemic levels next year as product demand recovers and inventory levels normalize.  Diamond S will be well-positioned to create value for our shareholders as the recovery unfolds.  Our recent sale of two Suezmax vessels highlights the disconnect between the tangible market value of our fleet and our current market capitalization.  These sales also add to our strong liquidity position, reduce our interest expense and are consistent with our historical approach to managing our balance sheet conservatively.

**The Proposed Transaction**

23.     On March 31, 2021, Diamond and INSW issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> NEW YORK & GREENWICH, Conn.--International Seaways, Inc. (NYSE: INSW) (the "Company" or "INSW") and Diamond S Shipping Inc. (NYSE: DSSI) ("Diamond S"), two of the leading tanker companies worldwide providing energy transportation services for crude oil and petroleum products in International Flag markets, announced today that their Boards of Directors have unanimously approved a definitive merger agreement pursuant to which INSW will merge with Diamond S in a stock-for-stock transaction.  Subsequent to the merger, INSW and Diamond S shareholders will own approximately 55.75% and 44.25% of the combined company, respectively, using fully diluted share counts as of March 30, 2021.
>
> The merger of Diamond S with INSW unites two companies with long-term customer relationships, similar cultures, and complementary positions in key tanker sectors.  The merger will enhance INSW's capabilities in both the crude and product markets and create "power alleys" for INSW in the large crude -VLCC and Suezmax– and LR1/Panamax and MR markets.  The merger will create the second largest US-listed tanker company by vessel count and the third largest by deadweight ("dwt").  On a pro forma basis, the combined company will have 100

vessels, shipping revenues of over $1 billion, over 2,200 employees, and an enterprise value of approximately $2 billion.

Among other benefits, INSW and Diamond S believe that the merger will achieve the following:

- Double INSW's net asset value in an all-stock merger to create a diversified tanker company with a 1001 vessel fleet aggregating 11.31 million dwt and significant footprints in the VLCC, Suezmax, LR1/Panamax and MR markets
- Accretive to INSW's earnings and cash flow per share immediately
- Realize estimated annual cost synergies in excess of $23 million and revenue synergies of $9 million, which are expected to be fully realizable within 2022
- Enhance equity trading liquidity through a larger market capitalization; estimated pro-forma market capitalization of close to $1 billion based on INSW's closing price of $18.36 on March 30, 2021
- Maintain significant financial strength, as INSW and Diamond S would have had a combined pro forma net leverage ratio of 42%2 at year-end 2020, one of the lowest in the tanker sector and across global shipping. INSW and Diamond S also would have had robust liquidity on a pro forma combined basis, with over $3002 million in cash at December 31, 2020
- Build upon best-in-class safety and Environmental, Social and Governance track records
- Enable combined company to maintain a $50 million share repurchase authorization and a quarterly dividend policy.  Immediately prior to the closing of the merger, existing INSW shareholders will also receive a special dividend of $1.10 per share

Douglas Wheat, Lois Zabrocky and Jeffrey Pribor will continue to serve as the Chairman of the Board of Directors, Chief Executive Officer ("CEO") and Chief Financial Officer of INSW, respectively, and the current CEO of Diamond S, Craig Stevenson Jr., will join the Board of Directors of INSW, and also act as a special advisor to the CEO for a 6-month period to ensure a smooth transition.

"We are excited to enter into this transformational transaction and create an industry bellwether," said Lois Zabrocky, INSW's President and CEO.  "By bringing together two leading US-based diversified tanker owners, we expect to deliver a number of compelling strategic and financial benefits to the stakeholders and customers of both companies.  Specifically, with our enhanced scale and capabilities combined with a best-in-class ESG track record, we are ideally positioned to meet the evolving needs of leading energy companies and capitalize on favorable long-term industry fundamentals.  With this highly accretive merger, we also expect to realize significant cost synergies while maintaining one of the lowest net leverage ratios in global shipping and increasing our equity market

capitalization and liquidity for the benefit of our shareholders.  We are proud of INSW's accomplishments since becoming a public company over four years ago and intend to continue to maintain an intense focus on preserving our financial strength and executing a balanced and accretive capital allocations strategy.  In addition to the special dividend related to this compelling transaction, we remain committed to returning capital to shareholders through our share repurchase program and our quarterly dividend."

Douglas Wheat, Chairman of INSW's Board of Directors, said, "With this transaction, we are establishing a leading diversified tanker company with the scale, financial strength and commercial expertise to create lasting value for both shareholders and customers.  We look forward to joining forces with Diamond S and continuing to meet the highest operational standards with an unwavering focus on safety and sustainability in the maritime sector.  We believe the combined company is well positioned to capitalize on opportunities in both the current market environment and well into the future."

Craig Stevenson Jr., President and CEO of Diamond S, commented, "By combining our fleet and capabilities with INSW's world-class operations, we believe the merger will significantly benefit each company's stakeholders as market conditions improve.  Importantly, both INSW and Diamond S share a similar focus on people, safety, meeting customer expectation, maintaining balance sheet strength, and appropriately managing leverage in an inherently cyclical industry.  As a long-time proponent of industry consolidation, I believe this transaction gives the combined company the scale and diversity necessary to hold the status as a leader in the tanker markets for years to come."

Nadim Qureshi, Chairman of the Board of Directors of Diamond S, said "We are pleased to enter into a transaction that will both create near-term value for our shareholders and create a superior, scale vehicle that enables investors to gain exposure in both the crude and product tanker markets with strong fundamentals. Importantly, since the focus of the management teams of both Diamond S and INSW are similar, we see further value from synergies in the combined company. We look forward to working with the team at INSW to see the transaction through to completion and ensure a great outcome for our shareholders."

*Key Terms of the Merger*

- Diamond S shareholders will receive 0.55375 shares of INSW common stock for each share of Diamond S common stock held.  Based on the closing prices of INSW's shares on March 30, 2021, the total stock consideration in the transaction has a value of approximately $416 million.

- Subsequent to the merger, INSW and Diamond S shareholders will own approximately 55.75% and 44.25% of the combined company, respectively, using fully diluted share counts as of March 30, 2021.

- INSW will assume Diamond S' net debt, which was $5652 million as of December 31, 2020.

- Immediately prior to the closing of the transaction, existing INSW shareholders will also receive a special dividend of $1.10 per share.

- Diamond S' affiliate management agreements with Capital Ship Management ("CSM") will be phased out over time, without interruption to the key customers being served by the vessels under CSM management.

- The merger, which is expected to close in the third quarter of 2021, is subject to the approval of the shareholders of INSW and Diamond S, regulatory approvals, and other customary closing conditions.

- The Board of Directors of INSW will comprise seven representatives of INSW and three representatives of Diamond S.

- A group of shareholders, representing approximately 14% and 29% of the issued and outstanding shares of INSW and Diamond S, respectively, has committed to vote in favor of the merger, subject to the terms and conditions contained in voting agreements reached with INSW and Diamond S.

- Following the merger, INSW will remain listed on the NYSE under the symbol "INSW".

- INSW and Diamond S received support for the transaction from the Diamond S bank group, led by Nordea Bank Abp, Crédit Agricole Corporate and Investment Bank and Skandinaviska Enskilda Banken AB (publ), who each also form key parts of INSW's lending group, and along with the remaining banks in the group have provided consents and agreed to amend their loan facilities.

**Insiders' Interests in the Proposed Transaction**

24.    Diamond insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Diamond.

25.    Notably, certain Company insiders have secured positions for themselves with the combined company.   For example, three current Diamond directors, including defendant

Stevenson, will become directors of the combined company and defendant Stevenson will serve as a special advisor to INSW's CEO for a six-month period following the completion of the merger for which he is expected to be paid $500,000.

26.     Moreover, if they are terminated in connection with the Proposed Transaction, Diamond insiders stand to receive substantial cash severance payments as set forth in the following table:

| Named Executive Officer | Cash (USD)[1] | Equity (USD)[2] | Pension/ Non-Qualified Deferred Compensation (USD) | Perquisites/ Benefits (USD)[3] | Tax Reimbursement (USD) | Other (USD) | Total (USD) |
|---|---|---|---|---|---|---|---|
| Craig H. Stevenson, Jr. | $2,907,000 | $2,993,745 | — | $63,923 | — | — | $5,964,668 |
| Kevin Kilcullen | 1,215,000 | 1,226,278 | — | 55,460 | — | — | 2,496,738 |
| Sanjay Sukhrani | 723,000 | 1,289,500 | — | 42,202 | — | — | 2,054,702 |

**The Proxy Statement Contains Material Misstatements and Omissions**

27.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Diamond's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

28.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Diamond and INSW's financial projections and the data and inputs underlying the financial valuation analyses performed by the Company's financial advisor Moelis; and (ii) Moelis' potential conflicts of interest.  Accordingly, Diamond stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Diamond's and INSW's Financial Projections and Moelis' Financial Analyses***

29.     The Proxy Statement omits material information regarding the Company's and INSW's financial projections.

30.     Specifically, the Proxy Statement fails to disclose the line items underlying Diamond's and INSW's: (i) net revenue; (ii) adjusted EBITDA; and (iii) unlevered free cash flow.

31.     Moreover, the Proxy Statement sets forth that in connection with its fairness opinion, Moelis:

- reviewed certain third-party vessel appraisals of Diamond S and INSW provided to Moelis by the management of Diamond S and certain adjustments to be made to such appraisals as agreed by Diamond S and INSW in connection with a net asset value analysis (referred to in this section as the "Appraisal Adjustments");

Proxy Statement at 74.  The Proxy Statement, however, fails to disclose the third-party vessel appraisals of Diamond that were subsequently adjusted by Diamond and INSW management.

32.     Additionally, the Proxy Statement sets forth that Moelis reviewed "estimates of management of INSW, as adjusted by the management of Diamond, regarding cost savings and other synergies anticipated to result from the merger, including the amount and timing thereof (referred to in this section as the "Synergy Estimates")[.]" *Id.* Yet, the Proxy Statement fails to disclose the Synergy Estimates as well as the specific adjustments Diamond made to INSW's synergy estimates.

33.     The Proxy Statement also describes Moelis' fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Moelis' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Diamond's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Moelis' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

34.     With respect to Moelis' *Net Asset Value Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 7.50% to 11.00%; and (ii) INSW's 2021 estimated EBITDA (adjusted by INSW to reflect a normalized run-rate EBITDA for 2021 excluding the effect of the COVID-19 pandemic) .

35.     With respect to Moelis' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 7.00% to 11.00% for Diamond and 6.50% to 10.75% for INSW; and (ii) the terminal values for Diamond and INSW.

36.     The omission of this information renders the statements in the "Certain Unaudited Forecasted Financial Information of INSW," "Certain Unaudited Forecasted Financial Information of Diamond S," and "Opinion of Diamond S' Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Moelis' Potential Conflicts of Interest***\

37.     The Proxy Statement omits material information concerning the potential conflicts of interest faced by the Company's financial advisor, Moelis.

38.     For example, the Proxy Statement sets forth:

In the past two years prior to the date of its opinion, Moelis also provided investment banking and other services to certain of Diamond S' significant shareholders, companies in which such shareholders had an interest and committees on which such shareholders participated, including acting as a financial advisor to WL Ross & Co in connection with a sale of an interest in a portfolio company that closed in December 2020, financial advisor to an ad hoc committee of senior secured creditors on which Invesco Ltd. or an affiliate thereof was a member in connection with a restructuring transaction that closed in October 2020, and financial advisor to a company in which Invesco Ltd. was a significant shareholder.

*Id.* at 81.  The Proxy Statement, however, fails to disclose the fees Moelis has received for providing investment banking and other services to WL Ross & Co., which owns 29% of the Company's common stock, and affiliates of Invesco Ltd.

39.   Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

40.   The omission of this information renders the statements in the "Opinion of Diamond S' Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

41.   The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Diamond will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

42.   Plaintiff repeats all previous allegations as if set forth in full.

43.   During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

44.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Diamond and INSW's financial projections, the data and inputs underlying the financial valuation analyses performed by the Company's financial advisor Moelis, and Moelis' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

46.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

47.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations
### of Section 20(a) of the Exchange Act

48.     Plaintiff repeats all previous allegations as if set forth in full.

49.     The Individual Defendants acted as controlling persons of Diamond within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of Diamond, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

52.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-

9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Diamond stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Diamond, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Diamond stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  July 2, 2021                                    **WEISSLAW LLP**


                                          By _____
                                             Richard A. Acocelli
                                             1500 Broadway, 16th Floor
                                             New York, New York 10036
                                             Tel: (212) 682-3025
                                             Fax: (212) 682-3010
                                             Email: racocelli@weisslawllp.com

                                             *Attorneys for Plaintiff*